IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BENILDA B.,<br><br>                 Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>                 Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 4:19-cv-00049-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Benilda B.'s appeal from the decision of the Social Security Administration denying her application for disability and disability insurance benefits. The Court held oral arguments on February 26, 2020. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling.

## I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

1

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A. PROCEDURAL HISTORY

On July 13, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 1, 2015.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on April 27, 2018.[9] The ALJ issued a decision on June 27, 2018, finding that Plaintiff was not disabled.[10] The Appeals Council denied Plaintiff's request for review on May 19, 2019,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

---

[4] *Richardson*, 402 U.S. at 390.
[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).
[7] R. at 227–28.
[8] *Id.* at 69, 97.
[9] *Id.* at 47–68.
[10] *Id.* at 9–40.
[11] *Id.* at 1–8.
[12] 20 C.F.R. § 422.210(a).

On June 19, 2019, Plaintiff filed her Complaint in this case.[13] The Commissioner filed his Answer and the administrative record on August 26, 2019.[14] On August 29, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15]

Plaintiff filed her Opening Brief on October 18, 2019.[16] Defendant filed his Answer Brief on November 22, 2019.[17] Plaintiff file a Reply Brief on December 6, 2019.[18]

B.   MEDICAL HISTORY

Prior to the relevant period, Plaintiff suffered a back injury. Plaintiff underwent two surgeries in 2012. She developed cauda equina syndrome with neurogenic bladder issues and chronic constipation.[19] Plaintiff has been informed that these issues may not resolve completely.[20] Plaintiff uses catheters for her urinary issues and takes laxatives for her constipation.[21] Plaintiff also has a history of depression.[22] Her depression is related to her physical medical issues.[23]

---

[13] Docket No. 3.
[14] Docket Nos. 8, 9.
[15] Docket No. 14.
[16] Docket No. 17.
[17] Docket No. 19.
[18] Docket No. 20.
[19] R. at 497.
[20] *Id.* at 500, 547.
[21] *Id.* at 451.
[22] *Id.* at 437, 513.
[23] *Id.* at 542.

C.   HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that her back pain limited her ability to work.[24] Plaintiff also testified that she had urinary and digestive problems and that she uses a catheter.[25] Plaintiff stated that she has been prescribed medication for her pain and digestive issues but that it does not help.[26] Plaintiff stated that she worked part-time and her employer made certain accommodations for her.[27]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity on or after June 1, 2015.[28] At step two, the ALJ found that Plaintiff suffered from the following severe impairment: degenerative disc disease of the lumbar spine.[29] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[30] At step four, the ALJ determined that Plaintiff could perform her past relevant work as a cleaner polisher and, therefore, she was not disabled.[31]

---

[24] *Id.* at 56.
[25] *Id.* at 57.
[26] *Id.* at 58.
[27] *Id.* at 56.
[28] *Id.* at 16.
[29] *Id.* at 16–17.
[30] *Id.* at 17–18.
[31] *Id.* at 34.

III. DISCUSSION

Plaintiff raises three issues in her brief: whether the ALJ erred in his evaluation of Plaintiff's cauda equina syndrome; whether the ALJ erred in his evaluation of the medical opinion evidence; and whether the ALJ erred in his credibility findings.

A. CAUDA EQUINA SYNDROME

The ALJ found that Plaintiff had only one severe impairment: degenerative disc disease. The ALJ concluded that Plaintiff's cauda equina syndrome and related bowel and urinary issues were non-severe because they caused no more than slight limitation in performing basic work activities. The ALJ also stated that Plaintiff's December 2012 surgery "resolved her cauda equina syndrome, because updated imaging revealed no evidence of impingement or compression."[32]

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[33] A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis.[34] However, "a showing of the mere presence of a condition is not sufficient."[35] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . .

---

[32] *Id.* at 17.

[33] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[34] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[35] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

5

the impairments do not prevent the claimant from engaging in substantial gainful activity."[36] "If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [s]he is not eligible for disability benefits."[37]

Plaintiff complains that the ALJ erroneously found that her cauda equina syndrome and its accompanying nerve damage were "resolved." However, this argument overstates the ALJ's decision. While the ALJ stated that Plaintiff's cauda equina syndrome was resolved by her December 2012 surgery, he made no such statement regarding Plaintiff's nerve damage or other issues associated with her cauda equina syndrome. Instead, the ALJ discussed these issues at length and concluded that they did not cause more than slight limitation in performing basic work activities. This conclusion is supported by the record. Therefore, there was no error in determining that these issues were non-severe.

The fact that these issues were not severe impairments does not end the inquiry. In assessing a claimant's residual functional capacity, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not."[38] Here, in determining Plaintiff's residual functional capacity, the ALJ stated that he considered the entire record, including "all limitations."[39] After considering this evidence, the ALJ "found that the claimant's medically determinable impairments could not reasonably be expected to produce the alleged limitations."[40] The ALJ went on to thoroughly discuss Plaintiff's medical history, including her

---

[36] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[37] *Id.*

[38] *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).

[39] R. at 18.

[40] *Id.*

cauda equina syndrome and related issues.[41] From this, the Court concludes that the ALJ considered Plaintiff's cauda equina syndrome and related issues in determining Plaintiff's residual functional capacity.[42]

Plaintiff argues that the ALJ erred by not including limitations for Plaintiff's bowel and bladder issues. However, there is little evidence that these issues support a finding of functional limitation. Plaintiff's own treating physician stated that Plaintiff would be able to work with her bowel and bladder issues.[43] Further, the ALJ noted that Plaintiff did not obtain significant treatment for these issues, was able to urinate on her own at times, and was noncompliant with her medication.[44] These things provide support for the ALJ's decision not to include additional limitations based on these conditions. Therefore, reversal is not required on this ground.

B.  MEDICAL OPINION EVIDENCE

An ALJ must review every medical opinion.[45] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[46] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[47] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent

---

[41] *Id.* at 24.

[42] *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word.") (internal quotation marks omitted).

[43] R. at 693.

[44] *Id.* at 29.

[45] 20 C.F.R. § 404.1527(c).

[46] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[47] *Id.*

7

with other substantial evidence in the record.[48] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[49]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[50] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[51]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[52] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[53]

### 1. Dr. Cain and Mr. Pearson

Plaintiff's treating physician, Larry A. Cain, M.D., authored a letter on April 8, 2016.[54] Dr. Cain stated that Plaintiff met the definition of disability under the American with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act.[55] Dr. Cain recommended Plaintiff obtain

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[52] *Id.*

[53] *Id.*

[54] R. at 680.

[55] *Id.*

a pet for emotional support.[56] This letter appears to have been written so that Plaintiff could have a dog at her new apartment.[57]

On February 27, 2018, Dr. Cain filled out two forms: Treating Source Statement of Mental Limitations[58] and Treating Source Statement of Physical Limitations.[59] In conjunction with these forms, Dr. Cain completed a treatment note. With respect to her mental limitations, Dr. Cain stated his belief that Plaintiff did not have any serious psychiatric symptoms that would limit her ability to work.[60] Instead, Dr. Cain believed that Plaintiff was able to function with her level of depression.[61]

As to her physical limitations, Dr. Cain stated that Plaintiff's lower back pain prevented her from being able to do any meaningful work.[62] He also noted that Plaintiff's bowel and bladder incontinence made work difficult.[63] While he believed that, under the right circumstances, she would be able to work despite her bowel and bladder issues, her back pain limited her ability to stay in a single position for a significant amount of time.[64] Dr. Cain opined that Plaintiff could lift less than ten pounds, stand/walk less than two hours, and sit less than two hours; that her symptoms would interfere with attention and concentration 20% or more of the

---

[56] *Id.*
[57] *Id.* at 681.
[58] *Id.* at 695–96.
[59] *Id.* at 697–98.
[60] *Id.* at 693.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*

time; Plaintiff would be off task 20% or more of the time in an 8-hour work day; would be absent from work four or more days per month; and would be 50% less efficient than an average worker.[65]

Another of Plaintiff's treating providers, Adon Pearson, PA-C, completed a Treating Source Statement of Physical Limitations. Mr. Pearson opined that Plaintiff was unable to work on a full-time sustained basis; that her symptoms would interfere with attention and concentration 20% or more of the time; Plaintiff would be off task 20% or more of the time in an 8-hour work day; would be absent from work four or more days per month; and would be 50% less efficient than an average worker.[66] Mr. Pearson also wrote a letter requesting that Plaintiff be allowed to work 20 hours per week.[67]

The ALJ afforded minimal weight to the opinions of Dr. Cain and Mr. Pearson. With respect to Dr. Cain, the ALJ stated that his opinions were internally inconsistent and unsupported by the objective findings in the medical record. The ALJ also took issue with the failure of both Dr. Cain and Mr. Pearson to acknowledge certain evidence, including: Plaintiff's work activities during the relevant period, evidence of medical improvement, noncompliance with treatment, and Plaintiff's ability to attend CNA college. Finally, the ALJ found that Dr. Cain's and Mr. Pearson's opinions were inconsistent with the unremarkable clinical exams in the record. These are all good reasons, supported by substantial evidence, that justify the ALJ giving little weight to the extreme opinions expressed by Dr. Cain and Mr. Pearson.

---

[65] *Id.* at 697–98.
[66] *Id.* at 533–34.
[67] *Id.* at 535.

Plaintiff argues that the ALJ's treatment of these opinions was erroneous. First, Plaintiff attacks the ALJ's statement that the fill-in-the-blank forms completed by Dr. Cain and Mr. Pearson were "highly leading" and were prepared by someone else.[68] While the ALJ did make these statements about the forms, he did not use this as a reason to discount this opinion evidence. Instead, the ALJ concluded that the record evidence did not support the extreme limitations opined by Dr. Cain and Mr. Pearson.

Plaintiff next argues that the ALJ erroneously concluded that these opinions were inconsistent with the findings of Chad Cole, M.D., a neurosurgeon. In particular, Plaintiff argues that the ALJ failed to note that Dr. Cole stated that Plaintiff's urinary, bowel, and left lower extremity discomfort would likely not resolve completely.[69] But, as discussed, the ALJ did recognize these ongoing issues, though he found that they did not support any additional limitations. Moreover, Plaintiff ignores the unremarkable examination findings by Dr. Cole during this same visit.[70]

2. *Mr. Plum*

In April 2018, Plaintiff saw Mike Plum, DPT, for a residual functional capacity evaluation.[71] Mr. Plum opined that Plaintiff was unable to perform full-time work; that she could occasionally lift up to 10 pounds; stand/walk for less the two hours; sit for less than two hours; that her symptoms would interfere with attention and concentration 20% or more of the

---

[68] *Id.* at 32.
[69] *Id.* at 500.
[70] *Id.* at 499–500.
[71] *Id.* at 875–92.

time; Plaintiff would be off task 20% or more of the time in an 8-hour work day; would be absent from work four or more days per month; and would be 50% less efficient than an average worker.[72] Mr. Plum stated that Plaintiff could return to work on a part-time basis with restrictions.[73]

The ALJ afforded minimal weight to the opinion of Mr. Plum. The ALJ provided a number of reasons for this decision. First, he noted that Mr. Plum had not reviewed Plaintiff's wage receipts from 2016 and 2017, which would have shown that Plaintiff worked more than 20 hours per week during numerous pay periods. Second, the ALJ stated that Mr. Plum failed to reconcile his findings with other findings in the record. Finally, Mr. Plum did not establish a longitudinal relationship with Plaintiff and issued his report specifically for the purposes of "disability."[74] For substantially the same reasons already discussed, these are good reasons, supported by substantial evidence, to give Mr. Plum's opinions little weight.

C. REPORT OF SYMPTOMS

Plaintiff next contends that the ALJ erred in making certain statements that appear to question Plaintiff's credibility. Specifically, the ALJ noted that Plaintiff worked more than 40 hours in certain pay periods, attended CNA college, and obtained a cosmetology license.

The Social Security Administration recently eliminated "the use of the term 'credibility.'"[75] Under SSR 16-3p, the ALJ must first determine whether an individual has a

---

[72] *Id.* at 877.
[73] *Id.* at 892.
[74] *Id.* at 878.
[75] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.[76] Next, the ALJ evaluates the intensity and persistence of an individual's symptoms to determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities.[77] In making this determination, the ALJ examines a number of factors, including:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[78]

In so doing, the ALJ does not "assess an individual's overall character or truthfulness."[79] Instead, the ALJ is to "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."[80]

Here, the ALJ's statements were made, not to impugn Plaintiff's character, but to point to those things that supported his finding that Plaintiff's "allegations concerning the intensity,

---

[76] *Id.* at *3.

[77] *Id.* at *4.

[78] *Id.* at *7–8.

[79] *Id.* at *11.

[80] *Id.*

13

persistence, and limiting effects of [her] alleged limitations did not appear reasonably consistent with the objective evidence and other evidence in consideration of the record in its entirety."[81]

Plaintiff has a point that the ALJ's reliance on Plaintiff's past cosmetology work is less than persuasive. However, it was only one of the many reasons for the ALJ's determination that Plaintiff's claim of total disability was not supported.

Plaintiff also takes issue with the ALJ's statement that Plaintiff completed CNA college. Plaintiff argues that there is no evidence to support this finding. However, a clinical note stated that Plaintiff needed a tuberculosis test because she was "[g]oing to CNA school."[82] There is also evidence in the record that Plaintiff worked as a CNA.[83] Thus, there is evidence from which the ALJ could properly conclude that Plaintiff completed her schooling. The ALJ could then use the fact that she completed this schooling and eventually worked as a CNA, though briefly, to conclude that Plaintiff's claim of total disability was not consistent with the other evidence in the record.

Plaintiff also attacks the ALJ's finding that Plaintiff had worked more than twenty hours a week on numerous occasions.[84] However, there is no suggestion that this statement is incorrect. A cursory review of Plaintiff's wage statements confirms that she did work more than 20 hours during the relevant period.[85] Thus, it was appropriate for the ALJ to consider this evidence in addressing Plaintiff's contention that she was limited to part-time work.

---

[81] R. at 18.
[82] *Id.* at 716.
[83] *Id.* at 418.
[84] *Id.* at 28.
[85] *See id.* at 250, 251, 252, 253, 255, 257, 258, 259, 260, 262, 264, 265, 267, 268.

14

## IV.  CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision below.

DATED this 17th day of March, 2020.

BY THE COURT:

Paul Kohler
United States Magistrate Judge